UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK

———————————

№ 07 Civ. 6159 (RJS)

———————————

Diemiruaya Ogheneakpor Deniran, *et al.*,

Plaintiffs,

VERSUS

John B. Mattingly, *et al.*,

Defendants.

———————————

MEMORANDUM AND ORDER
March 30, 2009

———————————

Richard J. Sullivan, District Judge:

   *Pro se* Plaintiff Diemiruaya Ogheneakpor Deniran ("Deniran"), together with Michael E. Noak, Jr. ("Noak"), Juliet N. Small, and Shatina Unique Freeman ("Freeman") bring this action pursuant to 42 U.S.C. § 1983 alleging violations of their constitutional rights stemming from an investigation by the New York City Administration for Children's Services ("ACS").

   Before the Court is certain Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted, and the claims against the remaining non-moving Defendants are dismissed *sua sponte*.

I. Background

   "For purposes of a motion to dismiss," the Amended Complaint is deemed "to include any written instrument attached to it." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Therefore, the following facts are taken from the Amended Complaint and the documents attached thereto. *See Faulkner v. Arista Records LLC*, --- F. Supp. 2d ----, No. 07 Civ. 2318 (DAB), 2009 WL 585879, at *6 (S.D.N.Y. Mar. 5, 2009). Plaintiffs' factual allegations are assumed to be true and all reasonable inferences are drawn in their favor.

*See In re Ades & Berg Group Investors*, 550 F.3d 240, 243 n.4 (2d Cir. 2008).

### A. Parties

Plaintiff Deniran is the father of Jalani Jamarr Akhmoseptahsetep Quaynor ("Jamarr") and a resident of New York City. (Am. Compl. at 5.) Jamarr's biological mother is non-party Hassanah Quaynor, who is also the mother of another boy named Romeo. (*See id.* ¶¶ 18, 19.) Plaintiff Freeman helped Deniran care for Jamarr prior to the time at which the child was turned over to ACS. (*See id.* at 6.)

Plaintiff Noak is also a New York City resident, who allegedly lived in an apartment on Utica Avenue in Brooklyn at the times relevant to Plaintiffs' allegations. (*Id.* at 5-6.) Noak is the biological father of Anesa Ma'at Small, and lives with Plaintiff Juliet N. Small ("Small"). (*See id.*)

Plaintiffs' name as Defendants four high-ranking officials in New York City's government: John B. Mattingly, Commissioner of ACS; Michael R. Bloomberg, Mayor of New York City; Raymond W. Kelly, Commissioner of the New York City Police Department ("NYPD"); and Michael A. Cardozo, New York City Corporation Counsel.

Plaintiffs name other Defendants who are New York City employees: Chelsea Cofer, a Child Protective Specialist at ACS; Clyde Clarke, a Child Protective Manager at ACS; "Sgt. Murphy," a police officer in the NYPD; "Detective Tosi," another NYPD officer; and Tiffany Goldberg, a social worker at the Woodhull Medical & Mental Health Center (collectively, with Defendants Mattingly, Bloomberg, Kelly, and Cardozo, the "City Defendants").

In addition to the City Defendants, Plaintiffs have also named as Defendants the "Park Slope Christian Help Center" ("CHIPS"); Sarah Harbutt, a CHIPS employee; and Olivette Casey (collectively, the "Private Defendants").

### B. Facts

Deniran alleges that, on approximately May 16, 2007, Quaynor transferred custody of Jamarr to him because she "fear[ed] the sudden loss of her two children" after Defendant Harbutt made a "racially biased accusation" to ACS that Quaynor "posed harm and danger to [her children because she] . . . . threw a plastic bottle at the child Romeo as a form of punishment . . . ." (*Id.* ¶¶ 18-19.) Deniran and Quaynor memorialized the terms of the transfer of custody in a "private agreement . . . that [would] prevent ACS from forcibly removing the infant as they have done uncountable times to African-American Mothers . . . ." (*Id.* ¶¶ 18, 20; *see also id.* Ex. B (the signed and notarized "private agreement").)

On May 16, 2007, Deniran and Plaintiff Freeman took Jamarr to the Woodhull Medical and Mental Health Center Emergency Room, where he was examined by Doctor Herve Jacques. (*Id.* ¶¶ 21-22.) Plaintiffs allege that Dr. Jacques found Jamarr "in excellent health with no sign of physical bruises or any other sign to suggest that the infant was subjected to abuse . . . ." (*Id.* ¶ 22.)

Plaintiffs allege that, at some unspecified time thereafter, Defendants Cofer and Clarke of ACS initiated "a racially biased plot to forcibly remove the child from his biological father" through the use of the Family Court of the State of New York ("Family Court") and the NYPD. (*Id.* ¶ 24.)

First, Plaintiffs allege that Clarke and Cofer filed a petition in Family Court under docket number NN-13296-07 "that can only be described as *malum in se* . . . ." (the "NN-13296-07 petition"). (*Id.* ¶ 25.) The caption of the petition named "JAMARR QUAYNOR, A child Under Eighteen Years of Age Alleged to be Neglected by HASSANAH QUAYNOR." (*Id.*) No Plaintiff in this action was named as a party in the petition, which is attached to the Amended Complaint. (*Id.* Ex. A.)

The NN-13296-07 petition stated that the addresses of Jamarr, his mother, and his father were "UNKNOWN," and sought "an order . . . determining . . . [Jamarr] to be a neglected child . . . ." (*Id.*) However, Plaintiffs allege that "[t]here was no evidence whatsoever that [Jamarr's] life was endangered by his biological mother," that Dr. Jacques' medical report was "incrontrovertible," and that the NN-13296-07 petition was based solely on "the racially biased testimony made by [Defendant] Harbutt claiming she saw [Quaynor] throw a plastic bottle at Romeo Reed, Not [Jamarr] . . . ." (*Id.* ¶¶ 26-27.)

On May 23, 2007, the Family Court issued an order bearing the caption of the NN-13296-07 petition, as well as the caption of an additional petition naming Romeo Reed as an allegedly neglected child (the "May 23, 2007 order"). (*Id.* ¶ 28 & Ex. D.) With respect to the NN-13296-07 petition, the order directed "[n]on-respondent father [Deniran] . . . to produce the subject child Jamarr to the ACS field office . . . by May 25, 2007," and that "respondent mother is to have liberal supervised visitation with both [Jamarr and Romeo Reed]." (*Id.* Ex. D.) The May 23, 2007 order "granted [Deniran] up to 35 days to appeal its contents . . . ." (*Id.* ¶ 28.)

A May 30, 2007 "Notice Of Pending Child Protective Proceeding" bearing the caption of the NN-13296-07 petition is also attached to the Amended Complaint. (*Id.* Ex. D.) The document is addressed to Deniran and states that "[e]nclosed is a copy of a petition filed in this Court by a child protective agency alleging that Hassanah Quaynor . . . neglected your child . . . . You are to appear before this Court . . . on June 21, 2007, 10:00 A.M." (*Id.*) The May 30, 2007 Notice also stated that Deniran was "*not* named as a Respondent in this petition," but provided additional information regarding the proceedings, including Deniran's right to participate as a third-party intervenor. (*Id.*)

Deniran did not produce Jamarr to ACS pursuant to the Family Court order, and on June 4, 2007, Defendants Cofer and Clarke "wrote a threatening letter to [Deniran], asserting their 'power' to issue [a] warrant for his arrest to produce his own biological son." (*Id.* ¶ 29; *see also id.* Ex. H (the June 4, 2007 letter to Deniran from ACS).) The June 4, 2007 letter was signed by Defendants Cofer and Clarke, and it stated, in pertinent part:

> As of today, June 4, 2007 you are in violation of the [May 23, 2007] order. I have made several attempts to contact you via telephone and home

3

visits and you have yet to contact me. You are non-compliant and you leave me no other choice but to file for a warrant for you to produce the subject child. You have until 12:00 noon on Wednesday June 6, 2007 to contact me.

(*Id.* Ex. H.) Plaintiffs allege that, following the June 4, 2007 letter, Defendants Clarke and Cofer "involved officers of the [NYPD] to join in the organized coercion to forcibly remove [Jamarr] from his biological father." (*Id.* ¶ 28.)

Plaintiffs also allege that, on June 14, 2007, "different unidentifiable individuals began making threatening visits to the residence of plaintiff Noak." (*Id.* ¶ 39.)[1] On June 15, 2007, four NYPD officers, including Defendants Sgt. Murphy and Detective Tosi, as well as "a couple of ACS workers," arrived at "the residence of Noak purporting to be in possession of a warrant for the arrest of Deniran for being a father to his own child." (*Id.* ¶ 40.) Plaintiffs allege that unspecified members of that group "claimed that Deniran had kidnapped his own child and must return him to ACS or else they would arrest and forcibly remove every occupant of plaintiff Noak's household." (*Id.* ¶ 41.) Plaintiffs further allege that there were "[r]epeated terrifying visits . . . coupled with incessant phone calls" between June 14 and June 19, 2007. (*Id.* ¶ 42.)

On June 16, 2007, Deniran "decide[d] against his will . . . to hand over his biological son to ACS . . . ." (*Id.* ¶ 44.) Plaintiffs allege that, despite having recovered Jamarr from Deniran, Defendants Murphy and Tosi "remained adamant and kept returning to Noak's residence for two extra days." (*Id.* ¶ 45.)

Plaintiffs maintain that, on June 16, 2007, Defendant Goldberg "received [Jamarr] from [Plaintiff] Freeman." (*Id.* ¶ 46.) A June 16, 2007 letter from Goldberg, a social worker at Woodhull Hospital, is attached to the Amended Complaint. (*Id.* Ex. F.) The letter states that "Shatina Horne dropped [Jamarr] at Woodhull Hospital after the baby's father stated he did not want the child and requested that Shatina take the child to ACS or the police. Woodhull social work staff will report the case to ACS who will follow up with placement of the child." (*Id.*) Plaintiffs characterize this document as a "vicious lie," and they contend that "there is overwhelming evidence to the contrary . . . ." (*Id.* ¶ 46.)

Plaintiffs further allege that, based on Goldberg's "carefully crafted" June 16, 2007 letter, Defendant Cofer "executed another fraudulent petition/affidavit supposedly under oath, this time accusing plaintiff Deniran of abandoning [Jamarr] with Tiffany Goldberg . . . as a bases [sic] to justify a racist declaration accusing Deniran of neglecting and abandoning his own child." (*Id.* ¶ 47.) The petition naming Deniran as a respondent in Family Court proceedings relating to Jamarr is also attached to the Amended Complaint. (*Id.* Ex. G.)

---

[1] The notarized "private agreement" signed by Deniran lists his address as 204 Utica Avenue, Brooklyn, New York. (*Id.* Ex. B.) Plaintiffs' allege that this address belonged to Plaintiff Noak (*id.* at 5), and refer to the apartment at the address as Plaintiff Noak's residence (*see, e.g., id.* ¶ 39).

4

B. Procedural History

Plaintiffs commenced this action by filing a Complaint on July 2, 2007, and subsequently filed an Amended Complaint dated July 16, 2007. (Doc. Nos. 1, 5.) Defendant Casey answered the Amended Complaint on August 13, 2007. (Doc. No. 9.) The City Defendants filed an Answer on August 31, 2007. (Doc. No. 11.) Defendants CHIPS and Harbutt have not appeared in this action.

On March 28, 2008, the City Defendants filed their motion for judgment on the pleadings. (Doc. No. 15.) Plaintiffs responded in opposition to the motion on April 23, 2008, and the City Defendants filed their reply on May 9, 2008. (Doc. Nos. 19-21.)

## II. STANDARD OF REVIEW

A. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is analyzed under the same standard applicable to a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). *In re Ades & Berg Group Investors*, 550 F.3d at 243. Accordingly, judgment on the pleadings is appropriate only where, after drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that no material issues of fact need to be resolved and that the moving party is entitled to judgment as a matter of law. *See Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 107 (2d Cir. 2008).

Ultimately, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Amended Complaint must therefore satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). If Plaintiff "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Moreover, as Plaintiffs are appearing *pro se*, the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

B. Section 1983

"To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] (2) by a person acting under the color of state law." *Williams v. City of New York*, No. 07 Civ. 3764 (RJS), 2008 WL 3247813, at *2 (S.D.N.Y. Aug. 7, 2008). "'Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.'" *Id.* (quoting *Duamutef v. Morris*, 956 F. Supp. 1112, 1115 (S.D.N.Y. 1997)).

### III. DISCUSSION

Plaintiffs allege that Defendants violated their constitutional rights "to be free from racially-biased seizures, illegal detention, humiliation and harassment" under the Fourth, Fifth, and Fourteenth Amendments. (Am. Compl. at 4.) The Amended Complaint seeks: (1) "injunctive and declaratory relief that will return [Jamarr] to his biological father Deniran . . ." (*id.* ¶ 53); (2) a declaration "that the policies executed by the ACS are discriminatory in nature and therefore violative of both Federal and State Laws" (*id.* ¶ 54); and (3) $100 million in damages (*id.* ¶ 56).

Construing Plaintiffs' pleading liberally, the Court deems the Amended Complaint to include claims under section 1983 relating to unconstitutional discrimination, Fourth Amendment and due process violations, and unlawful conspiracy. However, the Amended Complaint relies almost exclusively on speculative allegations regarding Defendants' motivations for commencing Family Court proceedings against Quaynor and Deniran. Plaintiffs' specific factual allegations about these events do not support an inference of a plausible entitlement to the relief they seek. Accordingly, their claims are dismissed.

#### A. Plaintiffs' Discrimination Claims

"'[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim . . . .'" *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) (quoting *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978)); *see also Phifer ex rel. Phifer v. City of New York*, No. 99 Civ. 4422 (DC), 2003 WL 1878418, at *6 (S.D.N.Y. Apr. 15, 2003). Plaintiffs repeatedly allege that Defendants' actions were "racially biased." (Am. Compl. ¶¶ 18, 24, 26.) However, the allegations in the Amended Complaint do not contain a single instance of objective conduct by any Defendant that was related to Plaintiffs' race. Rather, Plaintiffs make only "conclusory allegation[s] of discrimination," which, without more, "cannot withstand a motion to dismiss." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) (citing *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996)). Accordingly, to the extent Plaintiffs bring claims relating to unconstitutional race-based discrimination, those claims are dismissed.

#### B. Plaintiffs' Fourth Amendment Claims

Although Plaintiffs invoke the Fourth Amendment in the Amended Complaint, they make no allegations relating to a constitutionally unreasonable search or seizure. Rather, Plaintiffs allege that Defendants made "repeated terrifying visits," and "incessant phone calls" to the apartment at 204 Utica Avenue in Brooklyn. (Am. Compl. ¶ 42.) They further allege that these visits created a "potentially violent public spectacle through racially charged hostile confrontations, endangering the lives of plaintiffs and innocent bystanders in the building." (*Id.* at 3.) Although these allegations are relevant to the analysis of Plaintiffs' substantive due process claims, these events cannot give rise to a cognizable injury under the Fourth Amendment.

6

Plaintiffs acknowledge that an arrest warrant was issued for Deniran based on his failure to comply with the May 23, 2007 order that he produce Jamarr to ACS by May 25, 2007. (*See id.* ¶¶ 29, 40.) However, they appear to challenge the validity of that warrant by arguing that the neglect proceedings in which the warrant was issued — the NN-13296-07 petition against Quaynor based on allegations that she neglected Jamarr — were based solely on the "racially biased and malicious" allegation of Defendant Harbutt that Quaynor had thrown a plastic bottle at her son Romeo. (*Id.* ¶ 19; *see also id.* ¶ 27 ("There was no evidence whatsoever that [Jamarr's] life was being endangered by his biological mother.").)

Simply put, these allegations do not state a claim for a Fourth Amendment violation. First, Plaintiffs have not named Jamarr as a party or purported to bring this action on his behalf, and they may not assert Fourth Amendment claims on behalf of non-parties Quaynor and Jamarr. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Tenenbaum v. Williams*, 193 F.3d 581, 602 (2d Cir. 1999) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)). Second, the Family Court's May 23, 2007 order, in and of itself, constituted a warrant providing a valid basis for ACS officials to seize Jamarr if Deniran failed to voluntarily produce the child for observation by May 25, 2007. *See id.* ("In the context of [an alleged] seizure of a child by the State during an abuse investigation . . . a court order is the equivalent of a warrant."). Third, as Plaintiffs acknowledge, Deniran failed to comply with the May 23, 2007 order to produce Jamarr to ACS. (Am. Compl. ¶ 29; *see also id.* Ex. H.) After being warned in advance on June 4, 2007 that ACS would obtain a warrant to enforce compliance with the May 23, 2007 order (*id.* Ex. H), a warrant was issued, based on probable cause, that served as a valid basis for Defendants to seek to obtain custody of Jamarr (*id.* ¶¶ 29, 30).

Finally, despite Plaintiffs' allegations that the May 23, 2007 order and the warrant lacked sufficient evidentiary support (*see id.* ¶ 27), only probably cause was necessary to obtain a warrant authorizing ACS to obtain custody of Jamarr. Moreover, the Defendants are alleged to have participated in the visits to Plaintiffs' apartment — Defendants Cofer, Clarke, Murphy, and Tosi — invoke the defense of qualified immunity. "Government actors performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotations omitted). Thus, the inquiry is whether those Defendants "were reasonable in their belief that probable cause existed to support" any seizure that occurred. *See id.* The Second Circuit has emphasized "the importance of the availability of qualified immunity where child welfare workers are seeking to protect children from abuse." *Tennenbaum*, 193 F.3d at 605.

Here, prior to the events that Plaintiffs allege gave rise to a Fourth Amendment violation, neglect proceedings against Quaynor under the NN-13296-07 petition were commenced in Family Court. (Am. Compl. Ex. A.) The NN-13296-07 petition was supported by a sworn affidavit from

7

Defendant Clarke that described an interview with Defendant Harbutt and direct observation of the children at issue. (*Id.*) In connection with those proceedings, the May 23, 2007 order directed Deniran to produce Jamarr, he was provided with notice of those proceedings, and he failed to comply with the Family Court's directive. Those events, which are taken directly from Plaintiffs' pleading, gave rise to probable cause for the warrant that was subsequently issued.

Plaintiffs offer nothing more than conclusory allegations without any factual specificity regarding the manner in which Defendants conducted their investigation and executed the warrant. Thus, "[a]t the very least, caseworkers of reasonable competence could disagree on the legality" of the conduct of Defendants Cofer, Clarke, Murphy, and Tosi, "and, therefore, they are entitled to qualified immunity . . . ." *Orlick*, 2009 WL 702834, at *11 (internal quotations omitted). Accordingly, Plaintiffs' Fourth Amendment claims are dismissed.[2]

---

[2] To the extent the Amended Complaint can be construed as containing a malicious prosecution claim under section 1983, Defendants are entitled to qualified immunity. First, as stated above, Plaintiffs have failed to allege that a Fourth Amendment "seizure" took place. Second, "[t]he question of when a civil proceeding in Family Court can give rise to a malicious prosecution claim is not clearly established." *Orlick*, 2009 WL 702834, at *12.

Relatedly, any section 1983 claim based on allegations of malicious abuse of process must fail because Plaintiffs make no allegations that Defendants improperly pursued an improper collateral *objective* in the Family Court proceedings. *See Richardson v. New York City Health and Hospitals Corp.*, No. 05 Civ. 6278 (RJS), 2009 WL 804096, at *16-17 (S.D.N.Y. Mar. 25, 2009). Plaintiffs' allegations focus exclusively on Defendants' *motives*, and cannot support a malicious abuse of process claim under section 1983. *See id.*

## C. Plaintiffs' Due Process Claims

The majority of Plaintiffs' claims relate to alleged violations of procedural and substantive due process. The Court is mindful that "[a]lthough 'the State has a profound interest in the welfare of the child,' any interference with family integrity must be in accord with procedural and substantive due process guarantees . . . ." *Shapiro v. Kronfeld*, No. 00 Civ. 6286 (RWS), 2004 WL 2698889, at *12 (S.D.N.Y. Nov. 24, 2004) (quoting *Tennenbaum*, 193 F.3d 593-94). The Court addresses each due process claim in turn, and, for the reasons set forth below, the City Defendants' motion for judgment on the pleadings is granted as to these claims.

### 1. Procedural Due Process

Plaintiffs make two specific allegations relating to procedural due process. First, they allege that "upon information and belief, Hassanah Quaynor stood convicted *de facto* by ACS without due process . . . ." (Am. Compl. ¶ 19.) This allegation, which relates to the neglect proceedings in Family Court under the NN-13296-07 petition, cannot support a due process claim because neither Quaynor nor Jamarr are parties to this action. *See, e.g.*, *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) ("[O]nly the person toward whom the state action was directed, and not those incidentally affected may maintain a § 1983 claim." (internal quotations omitted)). Moreover, these is no allegation that Quaynor or Jamarr suffered a deprivation of any constitutionally protected

8

interest such that procedural due process would be implicated.

Second, Plaintiffs allege that the May 23, 2007 order and the warrant that was subsequently issued for Deniran's arrest violated their "constitutionally protected due process rights . . . ." (Am. Compl. ¶ 30.) "It is well established that parents 'have a constitutionally protected liberty interest in the care, custody and management of their children,' and family members have a fundamental right under the Fourteenth Amendment to remain together." *Shapiro*, 2004 WL 2698889, at *12 (quoting *Tenenbaum*, 193 F.3d at 593). However, Plaintiffs fail to allege how the mere issuance of the May 23, 2007 order and the warrant resulted in the deprivation of any constitutionally protected right relating to Deniran's custody of Jamarr. Indeed, "[t]he right to family integrity does not include a constitutional right to be free from child abuse investigations." *Id.* at *14.

"In the context of child removal proceedings, procedural due process prevents state actors from depriving a parent of the custody of his/her children without a pre-deprivation hearing unless the children are immediately threatened with harm." *Hollenbeck v. Boivert*, 330 F. Supp. 2d 324, 332 (S.D.N.Y. 2004) (internal quotations omitted). However, Plaintiffs' allegations make clear that Deniran was offered such a hearing and declined to participate.

Even ignoring that defect in Plaintiffs' allegations, "[i]n order to state a procedural due process claim . . . , plaintiffs must allege that the children were removed without parental permission and without Court authorization." *Hollenbeck*, 330 F. Supp. 2d at 332. Simply put, Plaintiffs have not satisfied these requirements. Rather, the documents that Plaintiffs attached to the Amended Complaint make clear that the Family Court and ACS provided Deniran with notice of the investigation, offered him an opportunity to participate, and made several attempts to obtain voluntary compliance with the May 23, 2007 order prior to obtaining the warrant. The warrant was obtained with judicial approval at some point after the June 4, 2007 letter, but prior to the June 16, 2007, the day on which Jamarr was delivered to Defendant Goldberg. These allegations cannot support a procedural due process claim. Accordingly, the City Defendants' motion as to these claims is granted.

### 2. Substantive Due Process

Substantive due process "protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is incorrect or ill-advised." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (citing *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)). The substantive due process claim asserted by Plaintiffs "is sometimes described as the right to 'family integrity,' or the right 'to remain together without the coercive interference of the awesome power of the state.'" *Shapiro*, 2004 WL 2698889, at *16. "The interests of parents, however, are counterbalanced by a 'compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'" *Bukovinsky v. Sullivan County Div. of Health*

9

*& Family Servs.*, No. 03 Civ. 8975 (SCR), 2008 WL 191018, at *6 (S.D.N.Y. Jan. 16, 2008) (quoting *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999)).

Plaintiffs allege that Defendants commenced unconstitutional investigations of both Quaynor and Deniran regarding the alleged neglect of Jamarr. They further allege that the allegations of abuse by Defendant Harbutt were completely contradicted by the medical findings of Dr. Jacques on May 16, 2007. (Am. Compl. ¶¶ 22, 27.) However, "for an investigation to pass constitutional muster, a caseworker need only have a '*reasonable basis*' for findings of abuse." *Bukovinsky*, 2008 WL 191018, at *7 (citing *Wilkinson*, 182 F.3d at 104-05) (emphasis added). Moreover, although Plaintiffs allege that some of these acts resulted in subjective fear, "emotional distress does not constitute a violation of a federally protected constitutional right." *Morgan*, 166 F. Supp. 2d at 819.

Therefore, in light of the deference to which these Defendants are entitled in conducting a judicially authorized investigation relating to the neglect of a minor, it cannot be said that Plaintiffs' allegations support an inference of government conduct that was "shocking, arbitrary, and egregious." *Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir. 2003) (internal quotations omitted). Accordingly, Plaintiffs' substantive due process claims are dismissed.

### D. Plaintiffs' Conspiracy Claims

Because the Court concludes that Plaintiffs' allegations do not state a claim for a violation of a constitutional right, Plaintiffs cannot maintain a conspiracy claim under section 1983. "[A]lthough the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 2003). Accordingly, Plaintiffs' conspiracy claims under section 1983 are dismissed.

### E. Plaintiffs' Claims Against the Private Defendants

As stated above, in addition to the City Defendants, Plaintiffs name as Defendants CHIPS; Sarah Harbutt, a CHIPS employee; Tiffany Goldberg, an employee of Woodhull Hospital; and Olivette Casey. Casey has obtained counsel and filed an Answer. (Doc. No. 6.) However, neither CHIPS nor Harbutt have appeared in this action.[3]

Plaintiffs are not proceeding *in forma pauperis*, and their claims are therefore not subject to mandatory dismissal upon a finding of frivolousness under 28 U.S.C. § 1915(e)(2). Nevertheless, "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee." *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000). Based on Plaintiffs' allegations, the Court harbors significant doubt as to whether these Defendants acted "under color of state law" at any time during these events such that

---

[3] The Court notes, however, that it is unclear that Plaintiffs have served either of these Defendants. This factual ambiguity is immaterial to the Court's analysis.

10

they would be subject to liability under section 1983. *See, e.g., Little v. City of New York*, No. 05 Civ. 2873 (DLI), 2005 WL 1889795, at *3 (E.D.N.Y. July 29, 2005) (holding that "a private individual [is] not a state actor for § 1983 purposes" (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999))). However, assuming, *arguendo*, that these Defendants are subject to liability under section 1983, Plaintiffs' claims would still be subject to dismissal for the reasons stated above. Accordingly, the Court *sua sponte* dismisses Plaintiffs' claims against Defendants Casey, Harbutt, and CHIPS.

### IV. CONCLUSION

For the foregoing reasons, the City Defendants' motion to dismiss Plaintiffs' claims is granted, and Plaintiffs' claims against the Private Defendants are dismissed *sua sponte*. Accordingly, this action is dismissed. The Clerk of the Court is respectfully directed to terminate the motion docketed as document number 15, and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 30, 2009
     New York, New York

\* \* \*

Plaintiffs are appearing in this matter on a *pro se* basis. The City Defendants are represented in this matter by Steven Douglas Weber, NYC Law Department, Office of the Corporation Counsel, 100 Church Street, New York, NY 10007. Defendant Casey is represented by James L. Franklin, 110 Wall Street, 11th Floor, New York, NY 10005.